**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| BLESSING CORPORATE SERVICES, INC., and JACOB STEVENS AND ASHLEY REARDON, individually and as parents and next friends of MEYAH STEVENS, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 2024-cv-3012

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff HOMELAND INSURANCE COMPANY OF NEW YORK ("Homeland"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, files this Complaint for Declaratory Judgment against Defendants BLESSING CORPORATE SERVICES, INC. ("Blessing") and JACOB STEVENS and ASHLEY REARDON, individually and as parents and next friends of MEYAH STEVENS, and in support thereof, states as follows:

**INTRODUCTION**

1. Homeland respectfully requests the Court render a judgment in this action declaring that it has no obligation to defend or indemnify Blessing under a certain excess insurance policy with respect to a lawsuit filed by Jacob Stevens and Ashley Reardon, as parents and next friends of Meyah Stevens, a minor, against Blessing Corporate Services in the Circuit Court of Adams County, Illinois (Case No. 16 L 56), arising out of medical care and treatment she received from March 1, 2015 through March 5, 2015 (the "Underlying Lawsuit").

2. Homeland issued an excess insurance policy to Blessing bearing Policy No. MPX-3798-14, effective from October 1, 2014 to October 1, 2015, and subject to a $20,000,000 limit of

1

liability (the "Excess Policy"). A certified copy of the Excess Policy is attached hereto and incorporated herein by reference as Exhibit A.

3. The Excess Policy provides coverage over Underlying Insurance consisting of, at a minimum, $11,500,000, inclusive of Blessing's $1,500,000 self-insured retention and a Health Care Organization Umbrella Liability Insurance Policy No. 0304-1199, issued by Darwin Select Insurance Company to Blessing Corporate Services, Inc., effective from October 1, 2014 to October 1, 2015, and subject to a $10 million limit of liability (the "Darwin Policy"). A true and correct copy of the Darwin Policy is attached hereto and incorporated herein by reference as Exhibit B.

4. On information and belief, an incident occurred involving the Meyah Stevens while she was being treated with Blessing in the time period of March 1, 2015 to March 5, 2015.

5. On or about June 25, 2015, Blessing provided notice of a circumstance that may give rise to a Claim under the Darwin Policy regarding treatment of Meyah Stevens.

6. However, Blessing did not provide notice of a circumstance under the terms of the Excess Policy to Homeland until June 30, 2022, more than seven years after the circumstances alleged in the Underlying Lawsuit occurred.

7. Blessing did not provide notice of the Underlying Lawsuit to Homeland until June 30, 2022.

8. At the time Blessing first provided notice of the Underlying Lawsuit to Homeland on June 30, 2022, the Underlying Lawsuit was in late-stage expert witness discovery.

9. The Underlying Insurance has not been exhausted as f the date of the filing of this litigation.

10. Homeland issued a reservation of rights under the Excess Policy for the Underlying Lawsuit, including the right to deny coverage under the Excess Policy for the Underlying Lawsuit, and Blessing has not agreed that coverage is inapplicable under the Excess Policy for the Underlying Lawsuit.

11. Therefore, Homeland respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, in its favor, and against Blessing, finding that Homeland has no obligation to provide a defense or indemnity under the Excess Policy for the Underlying Lawsuit.

## PARTIES

12. Homeland Insurance Company of New York is incorporated in New York and maintains its principal place of business within Minnesota. Therefore, Homeland is a citizen of New York and Minnesota for purposes of diversity jurisdiction.

13. Blessing is incorporated in Illinois and maintains its principal place of business within Illinois. Therefore, Blessing is a citizen of Illinois for purposes of diversity jurisdiction.

14. Jacob Stevens is domiciled in Quincy, Illinois. Therefore, Stevens is a citizen of Illinois for purposes of diversity jurisdiction.

15. Ashley Reardon is domiciled in Quincy, Illinois. Therefore, Reardon is a citizen of Illinois for purposes of diversity jurisdiction.

16. Meyah Stevens is domiciled in Quincy, Illinois. Therefore, Meyah is a citizen of Illinois for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

17. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Venue is appropriate under 28 U.S.C. § 1391 because the Excess Policy at issue in this dispute was issued to Blessing within this district, and the Underlying Lawsuit is pending within this district.

## BLESSING'S REQUEST FOR INSURANCE COVERAGE

19. In the Underlying Lawsuit, filed on October 7, 2016, Jacob Stevens and Ashley Reardon, as parents of Meyah Stevens, allege Blessing engaged in medical malpractice with respect to the care and treatment of Meyah between March 1, 2015 and March 5, 2015.

20. Blessing seeks coverage for the Underlying Lawsuit under the Excess Policy.

21. The Excess Policy provides excess coverage over Underlying Insurance, which includes, at a minimum, Blessing's $1,500,000 self-insured retention and the $10,000,000 Darwin Policy.

22. The Excess Policy is not triggered until the **Underlying Insurance** is exhausted:

> **I. INSURING AGREEMENT**
> **(A)** The Underwriter shall provide the **Insured** with insurance excess of the **Underlying Insurance** set forth in ITEM 4 of the Declarations, provided that the **Underlying Insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the applicable limit(s) of liability thereunder.
> \*\*\*
> **(D)** This Policy will apply in conformance with, and will follow the form of, the terms, conditions, agreements, exclusions, definitions and endorsements of the **Underlying Insurance**, except:
> \*\*\*

4

    **(3)** the applicable limit of liability of the **Underlying Insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss or damages (including costs, charges and expenses) that are covered under this Policy….

  **(E)** The Underwriter will not have any obligation to make any payment hereunder unless and until the full amount of the applicable limit of liability of the **Underlying Insurance** has been paid by the issuer(s) of the **Underlying Insurance**, the **Insured** or by another party on behalf, or for the benefit, of the **Insured** or the issuer(s) of the **Underlying Insurance**.

(Ex. A, § I.(A), (D)(3), (E)).

    23.    **Insured** is defined as "the persons or organizations insured under the **Underlying Insurance**." (Ex. A, § II.(D)).

    24.    **Underlying Insurance** is defined as "all insurance policies or risk transfer instruments (including, but not limited to, self-insured retentions or other alternative arrangements) scheduled in ITEM 4 of the Declarations and any policies or risk transfer arrangements renewing or replacing them." (Ex. A, § II.(G)).

    25.    **Policy Period** is defined as "the period from the inception date to the expiration date in ITEM 2 of the Declarations, or to any earlier cancellation date." (Ex. A, §II.(E)). ITEM 2 of the Declarations provides as follows:

> ITEM 2.   POLICY PERIOD:
> (a) Inception Date:  October 1, 2014
> (b) Expiration Date: October 1, 2015
>
> Both dates at 12:01 a.m. at the
> Principal Address in ITEM 1.

(Ex. A, Decl.).

    26.    ITEM 4 of the Declarations states "**See Schedule of Underlying Endorsement**," which provides, in relevant part, the following:

**ENDORSEMENT NO. 7**

**HEALTHCARE EXCESS INDEMNITY POLICY**
**SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT**

This Endorsement, which is effective at 12:01 a.m. on October 1, 2014, forms part of:

Policy No.  MPX-3798-14
Issued to   Blessing Corporate Services, Inc.
Issued by   Homeland Insurance Company of New York

In consideration of the premium charged:

The term "Underlying Insurance," as used in the Policy shall mean the following:

| Carrier | Policy# | Limit | Coverage |
|---|---|---|---|
| Darwin Select Insurance Company | 0304-1199 | $10,000,000/$10,000,000 | Excess Liability |
| Ironshore Specialty Ins. Co. | 000723005 | $15,000,000/$15,000,000 | Excess Liability |
| SIR | N/A | $1,500,000/$5,500,000 | Professional Liability Blessing Corporate Services |

(Ex. A, End. No. 7).

27. With respect to **Underlying Insurance**, the Excess Policy provides the following, in pertinent part:

> **(C)** No amendment or modification to any **Underlying Insurance** shall be binding upon the Underwriter or effective in extending the coverage or limits of liability afforded by this Policy without the express written agreement of the Underwriter.

(Ex. A, § III.(C)).

28. Blessing has provided no indication that the **Underlying Insurance** has been exhausted.

29. Pursuant to the Excess Policy, Blessing was required to provide Homeland notice of any notice of circumstance provided under **Underlying Insurance** during the **Policy Period**, as follows:

> **VIII. NOTICE**
>
> As a condition precedent to any right to payment of the **Insured** under this Policy, and in accordance with ITEM 6 of the Declarations, the **Insured** shall give the Underwriter's Claims Department written notice of:

> (A) any **Claim** under the **Underlying Insurance** as soon as possible, and in any event within the time period set forth by the **Underlying Insurance** with respect to notice of **Claims**; and
>
> (B) any matter with respect to which notice has been provided under any **Underlying Insurance**.
>
> With respect to Underlying Insurance written on a claims-made basis, if the **Insured** exercises the right under the **Underlying Insurance** to report a Notice of Circumstances (as defined below), then the **Insured** must also report such Notice of Circumstances to the Underwriter prior to the expiration of the **Policy Period**, and in any such event any **Claim** that subsequently may arise out of such circumstance shall be deemed to have been made during the **Policy Period** in which such Notice of Circumstances first was reported.
>
> As used herein, the term "Notice of Circumstances" means written notice of specific facts or circumstances of which the **Insured** becomes aware during the **Policy Period** that may subsequently give rise to a **Claim**.

(Ex. A, § VIII.).

30. Item 6 of the Declarations requires all notices be given, as follows:

> **ITEM 6.    ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER SECTION VIII OF THE POLICY MUST BE ADDRESSED TO:**
>
>> Chief Claims Officer
>> One Beacon Professional Partners
>> 199 Scott Swamp Road
>> Farmington, CT 06032

(Ex. A, Decl.).

31. On June 25, 2015, Blessing provided a notice of circumstance under the Darwin Policy related to the care and treatment of Meyah.

32. No such notice was provided to Homeland within the Policy Period.

33. Instead, more than seven years later, on June 30, 2022, Blessing gave Homeland its first notice of the claim related to Meyah's care and treatment. A true and correct copy of the June 30, 2022 notice is attached hereto as Exhibit C.

34. The June 30, 2022 notice was also the first notice of the Underlying Lawsuit to Homeland.

35. Section V. of the Policy requires Homeland's consent to incur **Defense Expenses**:

> **V.    DEFENSE EXPENSES AND SETTLEMENTS**
>
> In the event a **Claim** is made which involves the coverage afforded by this Policy, no **Defense Expenses** shall be incurred without the Underwriter's prior written consent, which consent shall not be unreasonably withheld.

(Ex. A, § V.).

36. **Defense Expenses** are defined as having "the meaning ascribed to it (or similar term) in the **Underlying Insurance**." (Ex. A, § II.(C)).

37. The Darwin Policy defines **Defense Expenses** as follows:

> G.    **"Defense Expenses"** means reasonable fees, costs and expenses incurred by or on behalf of the **Insured** in connection with the defense of a **Claim**; however, **Defense Expenses** shall not include:
>    1.    salaries, remuneration, overhead, fees, or benefit expenses of the **Insured**;
>    2.    fines, penalties, or taxes levied against the **Insured**; or
>    3.    **Loss**.

(Ex. B, § II.G.).

38. At the time Blessing provided Homeland with its first notice of the Underlying Lawsuit – initially filed on October 7, 2016 – it was in late-stage discovery involving expert witness disclosures.

39. Pursuant to the Excess Policy, Homeland had the right to associate in the defense of the Underlying Lawsuit:

> **VI.    CLAIM PARTICIPATION**
>
> The Underwriter may, at is sole discretion, elect to associate in the investigation, settlement, or defense of any **Claim** against the **Insured**, even if the **Underlying Insurance** has not been exhausted. If the Underwriter so elects, the **Insured** will cooperate with the Underwriter and will make

>available all such information and records as the Underwriter may reasonably require.

(Ex. A, § VI.).

40. Homeland was prevented from associating in the defense of the Underlying Lawsuit – initially filed on October 7, 2016 – until June 30, 2022, when Blessing first provided notice of the Underlying Lawsuit to Homeland.

*COUNT I – DECLARATORY JUDGMENT:*
**NO COVERAGE IS AFFORDED TO BLESSING UNDER THE EXCESS POLICY: FAILURE OF CONDITIONS PRECEDENT TO INSURANCE COVERAGE**

41. Homeland incorporates and realleges each and every allegation set forth in paragraphs 1 through 40 of this Complaint as if fully stated herein.

42. Pursuant to the Excess Policy, if Blessing exercised the right to report a Notice of Circumstances under the **Underlying Insurance**, it was then required to give Notice of Circumstances to Homeland prior to expiration of the **Policy Period**, as follows:

>**VIII. NOTICE**
>
>As a condition precedent to any right to payment of the **Insured** under this Policy, and in accordance with ITEM 6 of the Declarations, the **Insured** shall give the Underwriter's Claims Department written notice of:
>
>>(C) any **Claim** under the **Underlying Insurance** as soon as possible, and in any event within the time period set forth by the **Underlying Insurance** with respect to notice of **Claims**; and
>>(D) any matter with respect to which notice has been provided under any **Underlying Insurance**.
>
>With respect to Underlying Insurance written on a claims-made basis, if the **Insured** exercises the right under the **Underlying Insurance** to report a Notice of Circumstances (as defined below), then the **Insured** must also report such Notice of Circumstances to the Underwriter prior to the expiration of the **Policy Period**, and in any such event any **Claim** that subsequently may arise out of such circumstance shall be deemed to have been made during the **Policy Period** in which such Notice of Circumstances first was reported.

As used herein, the term "Notice of Circumstances" means written notice of specific facts or circumstances of which the **Insured** becomes aware during the **Policy Period** that may subsequently give rise to a **Claim**.

(Ex. A, § VIII.).

43. Item 6 of the Declarations requires all notices be given, as follows:

**ITEM 6.    ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER SECTION VIII OF THE POLICY MUST BE ADDRESSED TO:**

> Chief Claims Officer
> One Beacon Professional Partners
> 199 Scott Swamp Road
> Farmington, CT 06032

(Ex. A, Decl.).

44. Such notice is a condition precedent to coverage under the Excess Policy.

45. Despite providing Notice of Circumstances under **Underlying Insurance** (*i.e.* the Darwin Policy) on June 25, 2015, Blessing failed to provide such notice to Homeland.

46. Instead, Blessing provided its first notice of the Underlying Lawsuit and/or care and treatment of Meyah on June 30, 2022 – more than seven years after providing notice of circumstances under **Underlying Insurance**.

47. Such notice failed to provide timely notice of a Notice of Circumstances under the Excess Policy, in that it was not provided prior to expiration of the Policy Period on October 1, 2015.

48. Such notice failed to timely report or give notice of the Underlying Lawsuit under the Excess Policy.

49. Such untimely notice did not enable Homeland to elect to participate in the defense of the Underlying Lawsuit prior to late-stage expert witness discovery.

50. Blessing has not exhausted the **Underlying Insurance** in relation to the Underlying Lawsuit.

51. Due to the failure of one or more conditions precedent to coverage under the Excess Policy, Homeland owes no coverage obligations thereunder.

52. Homeland also reserves its rights to assert any other Excess Policy provisions or matters of law which limit or exclude coverage for the Underlying Lawsuit under the Excess Policy.

WHEREFORE, Homeland Insurance Company of New York respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, in its favor – and against Defendants – finding that Homeland has no obligation to provide a defense or indemnity to Blessing Corporate Services, Inc. under the Excess Policy for the Underlying Lawsuit and for such further relief as this Court deems just and appropriate.

Dated: January 24, 2024                                    Respectfully submitted,

*/s/ David T. Brown*
David T. Brown, Esq.
Sarah Riedl Clark, Esq.
KAUFMAN DOLOWICH LLP
30 N LaSalle Street, Suite 1700
Chicago, IL 60602
P: (312) 759-1400
F: (312) 759-0402
dbrown@kaufmandolowich.com
sarah.clark@kaufmandolowich.com
***Counsel for Plaintiff Homeland Insurance Company of New York***